UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 AUG 11  PM 1: 33

CLERK _____
SO. DIST. OF GA.

NEPHROLOGY ASSOCIATES, P.C.,

                              Plaintiff,

        v.

ETRANSMEDIA TECHNOLOGY, INC.,

                              Defendant.

**NOTICE OF REMOVAL**

Case No.:   CV 111—123

TO:   THE CLERK OF THE COURT FOR THE UNITED STATES DISTRICT
      COURT FOR THE SOUTHERN DISTRICT OF GEORGIA

        PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

defendant Etransmedia Technology, Inc. ("Etransmedia"), by its undersigned attorneys, hereby

removes this action to the United States District Court for the Southern District of Georgia,

Augusta Division upon the following grounds:

        1.      This action was commenced by the filing of a Summons and Complaint

with the Clerk's Office of the Superior Court of Richmond County, Georgia on July 7, 2011.

True copies of the Summons and Complaint are attached as Exhibit A.

        2.      As alleged in the Complaint, plaintiff is a professional corporation

organized under Georgia law, with its principal place of business located at University Hospital

Professional Center 1, 820 St. Sebastian Way, Suite 8A, Augusta, Georgia 30901.  See

Complaint, ¶ 2.

        3.      As alleged in the Complaint, defendant Etransmedia is a New York

Corporation, with its principal place of business located at 385 Jordan Road, Rensselaer

Technology Park, Troy, New York 12180.  See Complaint, ¶ 3.  Etransmedia has no offices in Georgia.

       4.     Etransmedia was served with the Summons and Complaint on July 12, 2011.

       5.     The Complaint alleges causes of action for among other things breach of contract, and seeks damages in excess of $1,000,000.  See Complaint, ¶ 64.

       6.     This Court has original jurisdiction over the above-entitled action pursuant to the provisions of 28 U.S.C. § 1332, and this action is one that may be removed to this Court pursuant to 28 U.S.C. § 1441, on the grounds that: (i) plaintiff is a Georgia professional corporation, with its principal place of business in Augusta, Georgia; (ii) Etransmedia is a New York corporation, with its principal place of business in Troy, New York; and (iii) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

       7.     Because the action was filed in the Superior Court of Richmond County, which is situated within the Southern District of Georgia, Augusta Division, removal to this Court is proper under 28 U.S.C. § 1446(a).

       8.     This Notice of Removal is being filed within thirty days of Etransmedia's receipt of the Summons and Complaint, which is the first pleading, motion, order, or other paper from which it may be ascertained that the case is one which is or had become removable, and therefore this Notice of Removal is timely under 28 U.S.C. § 1446(b).

       9.     There are no motions pending before the state court in this action.

       10.     All state-court papers served on the defendant at the time of removal, which consist of the Summons and Complaint, are attached.

11.     Written notice of filing of this Notice of Removal will be promptly filed with the Richmond County Clerk's Office and served upon plaintiff's counsel.

WHEREFORE, defendant Etransmedia Technology, Inc. removes this case from the Superior Court of Richmond County, State of Georgia to the United States District Court for the Southern District of Georgia, Augusta Division.

DATED: Augusta, Georgia
       August 11, 2011

TUCKER, EVERITT, LONG, BREWTON & LANIER

By:  S/ BENJAMIN H. BREWTON
       Benjamin H. Brewton
       State Bar No. 002530
       P.O. Box 2426
       Augusta, Georgia 30903
       Telephone No.: (706) 722-0771
       Fax No.: (706) 722-7028
       Email: bbrewton@thefirm453.com

Of Counsel:

Robert L. Lash
PHILLIPS LYTLE LLP
One HSBC Center, Suite 3400
Buffalo, New York 14203
Telephone No.: (716) 847-8400
Fax No.: (716) 852-6100
Email: rlash@phillipslytle.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and foregoing on the following counsel by depositing same in the United States Mail with sufficient postage affixed thereto prior to filing:

>MCGUIREWOODS LLP
>David J. Forestner
>Suite 2100, Promenade II
>1230 Peachtree Street NE
>Atlanta, Georgia 30309
>
>Jeffrey C. Clark
>David J. Pivnick
>McGuireWoods LLP
>Suite 4100, 77 W. Wacker Drive
>Chicago, IL 60601

This 11th day of August, 2011.

>By: S/ BENJAMIN H. BREWTON
>Benjamin H. Brewton
>State Bar No. 002530
>P.O. Box 2426
>Augusta, Georgia 30903
>Telephone No.: (706) 722-0771
>Fax No.: (706) 722-7028
>Email: bbrewton@thefirm453.com

## SUPERIOR COURT OF RICHMOND COUNTY
## STATE OF GEORGIA

NEPHROLOGY ASSOCIATES, P.C.,   )
   )
      Plaintiff,   )
   )
v.   )   CIVIL ACTION NO. _2011RCCV377_
   )
ETRANSMEDIA TECHNOLOGY, INC,   )
   )
      Defendant.   )
   )

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the CLERK of said court and serve upon the Plaintiff's attorney, whose name and address is:

> David J. Forestner, Esquire
> McGuireWoods LLP
> Suite 2100, Promenade II
> 1230 Peachtree Street NE
> Atlanta, GA 30309

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. NOTE: Any corporate party served must be represented by a licensed attorney at law (*see Eckles v. Atlanta Technology Group*, 267 Ga. 801).

This 7th day of July, 2011.

Deputy Clerk
Superior Court of Richmond County

**EXHIBIT**

"A"

## SUPERIOR COURT OF RICHMOND COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NEPHROLOGY ASSOCIATES, P.C., | ) | DANIEL J. CRAIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. _2011RCCV377_ |
| | ) | |
| ETRANSMEDIA TECHNOLOGY, INC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, NEPHROLOGY ASSOCIATES, P.C. ("NAPC"), by and through its undersigned attorneys, McGuireWoods, LLP, hereby states as follows for its complaint against Defendant ETRANSMEDIA TECHNOLOGY, INC ("Etransmedia"):

## NATURE OF CLAIM

1.      This is a breach of contract action arising out of Etransmedia's myriad breaches of a contract, the Agreement for Billing and Claims Processing Services and Business Associate Agreement (the "Billing Agreement"), and its complete disregard for NAPC's numerous requests for Etransmedia to fully and adequately perform its contractual obligations.  The Billing Agreement required Etransmedia to provide billing services and to submit claims to payors to ensure that NAPC was properly and timely paid the amounts that it was owed from numerous payors, including the Medicare and Medicaid programs, private insurance, and individual patients.  Throughout the course of its performance under the Billing Agreement, Etransmedia failed to provide adequate billing personnel.  Etransmedia also failed to provide personnel who had been trained sufficiently to properly provide the required billing services.  Etransmedia was dilatory in its collection efforts and made repeated billing errors that prevented NAPC from collecting funds that otherwise would have been received.  Worse, Etransmedia engaged in

conduct that created substantial concerns regarding compliance with the applicable Medicare and Medicaid rules and regulations. Therefore, as described more fully herein, this Complaint seeks redress for Etransmedia's numerous wrongful acts, which have caused NAPC to suffer decreased collections, have caused several accounts to become uncollectible, and have created compliance risks. This Complaint also seeks redress through requiring Etransmedia to return all accounts and relevant documents to NAPC.

## PARTIES

2.      Plaintiff NAPC is a professional corporation organized under Georgia law. Its principal place of business is located at University Hospital Professional Center 1, 820 St. Sebastian Way, Suite 8A, Augusta, Georgia 30901.

3.      Defendant Etransmedia is a corporation that has been incorporated under New York law with its principal place of business located at 385 Jordan Road, Rensselaer Technology Park, Troy, New York 12180, where it can be served by serving an officer or director with service of process.

## JURISDICTION AND VENUE

4.      The exercise of personal jurisdiction over Defendant Etransmedia is proper pursuant to O.C.G.A. § 9-10-91(1) because Etransmedia has transacted business within the State of Georgia as that term has been defined by the Supreme Court of the State of Georgia.

5.      Venue is proper pursuant to O.C.G.A. § 9-10-93 because a substantial part of the business at issue was transacted in Richmond County, many wrongful acts took place in or were directed at NAPC in Richmond County, and a substantial part of the injury to NAPC occurred in Richmond County.

## FACTUAL BACKGROUND

*Plaintiff Nephrology Associates, P.C.*

6.      NAPC is a business that provides care to patients with chronic kidney disease and related conditions.

7.      NAPC is located in Augusta, Georgia and has been providing necessary and critical patient care to residents of Richmond County since 1994.

8.      NAPC has retained and employs talented physicians and a strong medical staff who have significant experience and expertise in the care and treatment of patients with renal failure and with complex urinary tract abnormalities who require dialysis and transplant services.

*Defendant Etransmedia Technology, Inc*

9.      Etransmedia is a company that provides services to medical practices, including services related to patient and physician connectivity, practice management, documentation, and most importantly for purposes of this Complaint, revenue cycle management.

10.     Etransmedia purports to provide "highly skilled resources, cutting-edge technology, and innovative process[es]" that "provide substantially greater levels of reimbursement at lower cost than the competition." Etransmedia Technology, Inc – Revenue Cycle Management, Available at: http://www.etransmedia.com/revenue-cycle-management.php (last visited on June 30, 2011).

11.     Etransmedia also purports to offer benefits through reducing overhead, providing higher rates of return, providing faster cash flow, providing real-time access, and increasing efficiency. *Id.*

12.     Etransmedia claims that it is "committed to listening to [its] clients, identifying and understanding their needs, and working closely with them to develop innovative, customized solutions." *Id.*

3

*The Billing Agreement*

13.    On or around December 29, 2009, NAPC and Etransmedia entered into the Billing Agreement under which Etransmedia was to provide billing and claims processing services to NAPC.  A true and correct copy of the Billing Agreement is attached hereto as Exhibit A and incorporated herein by reference.

14.    The Billing Agreement states that "Etransmedia shall provide billing and claims processing services ('billing services') to Client. All Services will be provided in accordance with service commitments as mentioned below."  Ex. A at § 2.1.  The Billing Agreement also identified specific responsibilities for Etransmedia, including the following:

A.    [Etransmedia will] [s]ubmit claims to third party carriers as mutually agreed upon by Client and Etransmedia. Statements will be sent to patients on a monthly basis up to a maximum of three statements per patient balance above $10.

B.    Etransmedia will perform billing services on Allscripts Professional Practice Management system owned by the Client.

C.    [Etransmedia will] [p]rovide to Client a monthly Aging report for charges billed through Etransmedia.  In addition, Client may choose two additional reports to be sent monthly as part of this contract.

D.    Claims are submitted with the Client's address listed as the remittance address.

E.    As requested by the client, initial batch of patient statements will be sent out immediately [by Etransmedia] once the patient accounts are updated with insurance payment receipts. After the initial batch of patient statements, subsequent patient statements will be mailed out on a weekly basis with a maximum of 28 days gap between patient statements to any patient.

*See id.* at p. 3, § 2.1.

15.    Under the Billing Agreement, the parties "agreed that [the] fee and terms for billing and collection services performed by Etransmedia Technology Inc is as follows: . . . 3.5

4

% of all receipts for all accounts billed through Etransmedia Technology Inc [and] 2.5% of all receipts for Aranesp and other drugs billed through Etransmedia Technology, Inc." *See id.* at § 2.2 and Appendix A.

16.     The Billing Agreement does not provide Etransmedia any compensation for NAPC accounts on which Etransmedia does not provide billing services. *See* Ex. A.

17.     The Billing Agreement is not an exclusive agreement and does not require that NAPC refrain from using other billing companies. *Id.* Moreover, the Billing Agreement does not require NAPC to send any minimum number of accounts to Etransmedia. *Id.*

18.     The term of the Billing Agreement was for five (5) years. *Id.* at § 4.1. However, the Billing Agreement specifically provides that:

> [d]uring the term of the contract, Client and Etransmedia have the right to terminate this Agreement with written sixty (60) day notice, with cause, at any time during the Agreement. However, Client and Etransmedia will attempt to resolve any reason(s) to terminate the Agreement during that period. If a satisfactory solution has been obtained, consideration to extending the Agreement will be given. If a satisfactory solution has not been reached, then the Agreement will terminate sixty (60) days after notice.

*Id.* at § 4.2.

19.     The Billing Agreement is to be interpreted in accordance with the laws of the State of New York. *Id.* at § 5.1.

20.     Pursuant to the terms of the Billing Agreement, "[a]ny notice or communication required or permitted under this Agreement shall be in writing and shall be deemed to have been given on the date delivered personally or deposited in the United States Postal Service, certified mail, return receipt requested, with adequate postage affixed, addressed to the official addresses noted at the beginning of this Agreement." *Id.* at § 5.7.

21.    Prior to entering into the Billing Agreement, NAPC had handled its billing and collections internally.

*Etransmedia's Initial Breaches of the Billing Agreement*

22.    Almost immediately after the Billing Agreement was executed, there were difficulties in communicating with Etransmedia.  Moreover, NAPC had significant concerns regarding Etransmedia's performance under the Billing Agreement, which did not meet NAPC's expectations.

23.    In fact, Etransmedia was breaching the Billing Agreement in several ways. Specifically,

A.    Etransmedia had failed to provide the required and promised experienced nephrology billing staff.  Moreover, Etransmedia failed to provide an adequate number of staff members to work on NAPC's billing.

B.    Etransmedia's billing staff had improperly entered numerous billing codes.

C.    NAPC's cash flow and collections were adversely affected by NAPC having switched to Etransmedia for the provision of billing services.

D.    Etransmedia's support staff had provided incomplete and unsatisfactory responses to problems that were identified by NAPC.

E.    Etransmedia failed to timely send out the patient statements that it was obligated to send pursuant to Section 2.1(e) of the Billing Agreement. *See* Ex. A at p. 3, § 2.1.

24.    These breaches of the Billing Agreement were both disconcerting to NAPC and caused it damages through decreased collections and certain accounts becoming uncollectible.

*The Services Agreement*

25.    On or about December 23, 2009, NAPC and Etransmedia entered into an entirely separate agreement relating to the provision of electronic records management.  This Services Agreement also had a five (5) year term, but included certain provisions by which NAPC could terminate the Agreement early based upon Etransmedia's wrongful conduct.

*The Initial Notice of Breach of the Billing Agreement and the Services Agreement*

26.    As a result of Etransmedia's breaches of the Agreements, NAPC sent a Notice of Breach of the Billing Agreement and the Services Agreement to Etransmedia (the "Notice of Termination"), which set forth Etransmedia's multiple breaches of both the Billing Agreement and the Services Agreement.  A true and correct copy of the Notice of Termination is attached hereto as Exhibit B and incorporated herein by reference.

27.    In the Notice of Termination, NAPC informed Etransmedia of its numerous breaches of the Agreements and demanded that NAPC cure those breaches within sixty (60) days.  *See id.*  NAPC stated that, in the event that Etransmedia failed to cure its breaches, it would terminate both the Billing Agreement and the Services Agreement.  *Id.*

28.    NAPC sent the Notice of Termination via certified mail, as was required by both the Billing Agreement and the Services Agreement.

*Etransmedia's Refusal to Accept Service of the Notice of Termination*

29.    Etransmedia, acting both through its President and CEO and through its Vice President Operations, refused to accept the certified mail copies of the Notice of Termination.  True and correct copies of the envelopes reflecting Etransmedia's refusal to accept delivery are attached hereto as Exhibit C and incorporated herein by reference.

30.     After receiving the returned copies of the Notice of Termination, NAPC's counsel sent an electronic mail attaching the Notice of Termination and also sent the Notice of Termination via Federal Express to both Etransmedia's President and CEO and to its Vice President Operations.  True and correct copies of NAPC's counsel's August 26, 2010 electronic mail is attached hereto as Exhibit D and incorporated herein by reference.

31.     Subsequently, Etransmedia finally had its employees reach out to NAPC to address its wrongful conduct.  NAPC acted diligently to work with Etransmedia as Etransmedia attempted to correct its breaches.

*Etransmedia's Continuing Breaches and Regulatory Implications*

32.     Despite Etransmedia's purported desire to continue working with NAPC and to resolve its breaches of the Billing Agreement, its conduct actually worsened subsequent to the Notice of Termination.

33.     In fact, Etransmedia continued to breach the Billing Agreement in the same ways in which it had previously breached the Billing Agreement.  However, Etransmedia also began to engage in conduct that not only breached its obligations under the Billing Agreement, but also raised significant regulatory and compliance concerns for NAPC.

34.     Etransmedia's myriad breaches of the Billing Agreement included multiple instances of Etransmedia acting improperly, failing to fulfill its obligations under the Billing Agreement, and/or breaching the implied duty of good faith and fair dealing.  Specifically,

A.     Etransmedia engaged in improper conduct with regards to the billing of Medicaid patients.  For example, Etransmedia improperly balance billed such Medicaid patients despite the fact that such billing is not permissible.

8

B.      Etransmedia failed to properly code and bill claims relating to Medicare patients, which failings on the part of Etransmedia created regulatory and compliance concerns.

C.      Etransmedia failed to provide NAPC copies of the monthly aging reports that are explicitly required under Section 2.1(c) of the Billing Agreement.

D.      Etransmedia also failed to timely and consistently mail patient statements pursuant to its obligations under Section 2.1(e) of the Billing Agreement.

E.      Etransmedia relied on an insufficient number of billing personnel in attempting to perform its obligations under the Billing Agreement. The billing staff that Etransmedia did rely upon lacked the requisite experience and knowledge to handle NAPC's billing requirements.

F.      Etransmedia also failed to act in good faith and to exercise its best collection efforts to ensure that NAPC received the best possible collection results. In fact, the percentage of payments that NAPC received from its billing decreased dramatically during Etransmedia's stewardship of NAPC's accounts.

G.      Etransmedia also failed to act diligently in recording payments and keeping account information up-to-date. Accordingly, Etransmedia often improperly sent bills to payors, including patients, even after the bills had already been paid.

H.      Etransmedia also failed to properly respond to denials and its improper conduct in this regard has caused multiple accounts to become uncollectible.

9

I.  On numerous occasions, Etransmedia also submitted bills to incorrect payment sources, which prevented NAPC from receiving the amounts that it was owed.

35.  In light of Etransmedia's continuing and exacerbated breaches of the Billing Agreement, NAPC determined that it could no longer attempt to simply accept Etransmedia's assurances that it would comply with its contractual obligations.

*The Second Notice of Breach of the Billing Agreement*

36.  On June 7, 2011, NAPC sent a second Notice of Breach of the Billing Agreement to Etransmedia (the "Notice of Breach"). A true and correct copy of the second Notice of Breach is attached hereto as Exhibit E and incorporated herein by reference.

37.  Pursuant to the terms of the Billing Agreement, NAPC sent the Notice of Breach via certified mail. Additionally, because Etransmedia had previously refused to accept the initial Notice of Termination via certified mail, NAPC also sent the Notice of Breach via Federal Express.

38.  The Notice of Breach set forth the background of Etransmedia's prior misconduct and reminded Etransmedia of the earlier Notice of Termination. *Id.*

39.  The Notice of Breach then set forth Etransmedia's continuing and new breaches of the Billing Agreement. *Id.* The identified breaches are consistent with those breaches that are set forth in Paragraph 34 of this Complaint.

40.  In the Notice of Breach, NAPC explained to Etransmedia that its breaches were particularly disconcerting with regard to the Medicare and Medicaid patients because of the regulatory and compliance concerns that were implicated by Etransmedia's misconduct with regard to such patients. *Id.* Accordingly, the Notice of Breach informed Etransmedia that,

during the cure period, NAPC would not be sending additional Medicare or Medicaid accounts to Etransmedia.

41.    The Notice of Breach stated that the Services Agreement was not being terminated. *Id.*

42.    The Notice of Breach also stated that the Billing Agreement would terminate if Etransmedia did not cure its breaches within the cure period that is set forth in the Billing Agreement. *Id.*

*Etransmedia's Refusal to Accept the Notice of Breach*

43.    On or about June 15, 2011, the copies of the Notice of Breach that had been sent to Etransmedia via certified mail were returned to NAPC's counsel.  The envelopes indicated that Etransmedia had refused to accept service of the certified mail copies of the Notice of Breach.  True and correct copies of the envelopes indicating Etransmedia's refusal to accept service are attached hereto as Exhibit F and incorporated herein by reference.

44.    The Billing Agreement explicitly provides for Notices to be transmitted via certified mail.  *See* Ex. A at § 5.7.  Etransmedia's refusal to accept service of the Notice of Breach via certified mail constitutes an additional breach of the Billing Agreement.

45.    NAPC has received confirmation that the copies of the Notice of Breach were delivered to Etransmedia via Federal Express.  True and correct copies of the confirmations of delivery via Federal Express are attached hereto as Exhibit G and incorporated herein by reference.

*Etransmedia's Agent Contacts NAPC*

46.    On June 24, 2011, Mozelle Stevens, one of Etransmedia's employees and agents, contacted Bart Brezina, M.D. ("Dr. Brezina"), who is one of the physician-owners of NAPC.

47.   During that conversation, Ms. Stevens inquired about the status of the Billing Agreement.  Dr. Brezina informed Ms. Stevens that a Notice of Breach had been sent as a result of Etransmedia's myriad failings under the Billing Agreement.  Moreover, Dr. Brezina informed Ms. Stevens that NAPC's trust in Etransmedia had been eroded by Etransmedia's myriad breaches, failure to communicate, and refusal to even accept service of the Notice of Breach, let alone to respond to the Notice of Breach or to cure its numerous breaches.

48.   Ms. Stevens did not provide any explanation for Etransmedia's misconduct nor did she provide any plan Etransmedia had to remedy, or at least to begin remedying, its numerous breaches.

49.   Dr. Brezina did not tell Ms. Stevens to have Etransmedia to cease all work on NAPC accounts.

*Etransmedia's Refusal to Conduct Work on NAPC Accounts*

50.   On Monday, June 27, 2011, an NAPC employee, Cindy Hardigree, sent an electronic mail message to one of Etransmedia's employees and agents, Jody Childrose.  A true and correct copy of the June 27, 2011 electronic mail chain, with patient identifying information redacted, is attached hereto as Exhibit H and incorporated herein by reference.  That electronic mail requested assistance with a patient's charges that had been improperly entered into the system.  *Id.*

51.   In response, Ms. Childrose replied by electronic mail stating: "I would love to help you out, but per Mozelle on Friday she had a conversation with Dr Brezina—that we are to stop further action on your account. Process claims, post payments, phone calls, statements, emails etc,.... If this is incorrect, please advise me."  *Id.*  This electronic mail message

12

manifested Etransmedia's unambiguous intent to repudiate the Billing Agreement and its refusal to continue performing under the Billing Agreement.

52.    There is no basis in fact for Ms. Childrose or Ms. Stevens' assertions that Dr. Brezina had instructed Etransmedia to "stop further action" on NAPC's account.

53.    In fact, that very day, Dr. Brezina sent an electronic mail message to Ms. Childrose and Ms. Stevens stating that he had not instructed Etransmedia to stop working on NAPC's account and informing them that Etransmedia had no right to stop working on NAPC's accounts. A true and correct copy of Dr. Brezina's June 27, 2011 electronic mail, with patient identifying information redacted, is attached hereto as Exhibit I and incorporated herein by reference.

54.    Etransmedia has not responded to Dr. Brezina's electronic mail message. More importantly, based upon information and belief, Etransmedia has not been engaging in any work or collection efforts regarding NAPC's accounts.

55.    Moreover, Etransmedia has not returned any accounts, account information or documents to NAPC.

56.    NAPC is being harmed by Etransmedia's conduct, specifically through the aging of its accounts and by Etransmedia's refusal to work on or return its accounts.

## COUNT I
### Breach of Contract

57.    NAPC realleges and incorporates paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

58.    The Billing Agreement is a valid and binding contract between NAPC and Etransmedia.

59.    NAPC has fully performed its obligations under the Billing Agreement.

13

60.     Etransmedia has egregiously breached the Billing Agreement by:

A.      improperly balance billing Medicaid patients;

B.      improperly coding and billing Medicare claims;

C.      failing to provide NAPC with the monthly aging reports for the charges

that are billed through Etransmedia as is required under Section 2.1(c) of

the Billing Agreement;

D.      failing to comply with its unambiguous obligations under Section 2.1(e) of

the Billing Agreement;

E.      failing to provide an experienced and knowledgeable billing staff;

F.      failing to act in good faith and not exercising its best efforts to ensure that

strong results are obtained;

G.      sending bills on accounts that have already been paid;

H.      failing to take appropriate actions regarding denials; and

I.      submitting bills to incorrect payment sources.

61.     In addition to its numerous breaches of the Billing Agreement, Defendant

Etransmedia has also breached the implied covenant of good faith and fair dealing by: 1) failing

to provide sufficient billing staff to handle the demands of NAPC's practice; 2) failing to act

diligently in its collection efforts; and 3) engaging in billing and coding practices with a

disregard of the relevant rules and regulations and in a manner that could create serious

compliance and regulatory risks.  Through its breaches of the implied covenant of good faith and

fair dealing, Etransmedia has interfered with NAPC's right to receive the benefits of the Billing

Agreement.

14

62.     Defendant Etransmedia has also anticipatorily breached the Billing Agreement by refusing to accept the Notice of Breach and by asserting that it would be ceasing all performance under the Billing Agreement rather than curing its myriad breaches.  Specifically, Etransmedia refused to accept the Notice of Breach and its employees have informed NAPC that Etransmedia would be stopping all work on NAPC's accounts.

63.     Such conduct on the part of Etransmedia constituted an anticipatory repudiation and breach of the Billing Agreement.   Therefore, because Etransmedia has anticipatorily repudiated the Billing Agreement, it no longer has the opportunity to cure its numerous breaches of the Billing Agreement.

64.     Etransmedia's numerous breaches of the Billing Agreement have caused NAPC to suffer damages in excess of $1,000,000.00 and in an amount that must be determined at trial.

WHEREFORE, for the foregoing reasons, Plaintiff Nephrology Associates, P.C. respectfully requests that this Court enter an order:

A.     awarding NAPC compensatory damages in an amount that is in excess of $1,000,000.00 to compensate NAPC for its decreased collections and for the accounts that were rendered uncollectible as a result of Etransmedia's breaches of, and misconduct relating to, the Billing Agreement; and

B.     awarding NAPC its costs and such other and further relief as this Court deems just and equitable.

## COUNT II
## Declaratory Relief

65.     NAPC realleges and incorporates paragraphs 1 through 36 of this Complaint, as though fully set forth herein.

15

66.    The Billing Agreement is a valid and binding contract between NAPC and Etransmedia.

67.    Etransmedia has egregiously breached the Billing Agreement in numerous ways, including by improperly billing Medicaid and Medicare patients and claims, which created substantial compliance and regulatory risks for NAPC, as well as by shutting down all work on NAPC accounts despite Etransmedia's unambiguous obligations under the terms of the Billing Agreement.

68.    Defendant Etransmedia has also anticipatorily breached the Billing Agreement by refusing to accept the Notice of Breach and by asserting that it would be ceasing all performance under the Billing Agreement rather than curing its myriad breaches.  Specifically, Etransmedia refused to accept NAPC's second Notice of Breach of the Billing Agreement when it was sent via certified mail, as is required in the Billing Agreement.  Moreover, having received a copy of the Notice of Breach via FedEx, Mozelle Stevens and Jodi Childrose, two employees and agents of Etransmedia, informed NAPC that Etransmedia would be stopping all work on NAPC's accounts and would therefore, not be continuing to perform its obligations under the Billing Agreement.

69.    Etransmedia's refusal to perform its obligations under the Billing Agreement constituted an anticipatory repudiation and breach of the Billing Agreement.  Additionally, this conduct unambiguously demonstrated that Etransmedia was unwilling to cure its numerous breaches of the Billing Agreement.  Therefore, because Etransmedia has anticipatorily repudiated the Billing Agreement, it no longer has the opportunity to cure its numerous breaches of the Billing Agreement and the Billing Agreement is terminated.

70.    In light of Etransmedia's egregious conduct, a dispute exists regarding any continuing obligations under the Billing Agreement and regarding NAPC's right to obtain all of its accounts and related documents.

71.    Accordingly, declaratory relief is appropriate in this matter.

WHEREFORE, for the foregoing reasons, Plaintiff Nephrology Associates, P.C. respectfully requests that this Court enter an order:

A.    declaring that the Billing Agreement is terminated and that neither NAPC nor Etransmedia shall have any continuing rights or obligations arising thereunder;

B.    ordering Etransmedia to promptly return all NAPC accounts, account files, and documents relating to NAPC, including all copies of such accounts, account files, and documents; and

C.    awarding NAPC its costs and such other and further relief as this Court deems just and equitable.

## COUNT III
### Expenses of Litigation Including Attorneys' Fees

72.    NAPC realleges and incorporates paragraphs 1 through 56 of this Complaint, as though fully set forth herein.

73.    Etransmedia has acted in bad faith, been stubbornly litigious and/or caused NAPC unnecessary trouble and expense and this NAPC is entitled to collect from Etransmedia its expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, for the foregoing reasons, Plaintiff Nephrology Associates, P.C. respectfully requests that this Court enter an order:

A.    awarding NAPC its expenses of litigation, including attorneys' fees, associated with bringing this action; and

B.      such other and further relief as this Court deems just and equitable.


Respectfully submitted, this 7th day of July, 2011.

MCGUIREWOODS LLP


_____
David J. Forestner
Georgia Bar No. 269177

*Counsel for Nephrology Associates, P.C.*

Suite 2100, Promenade II
1230 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 443-5500
Telecopier: (404) 443-5599

Of counsel:
Jeffrey C. Clark
David J. Pivnick
MCGUIREWOODS LLP
Suite 4100, 77 W. Wacker Drive
Chicago, IL  60601

\32037579

18