UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

_____

NEPHROLOGY ASSOCIATES, P.C.,

                                    Plaintiff,

            v.                                                      Case No.: 1:11-cv-00123-JRH -WLB

ETRANSMEDIA TECHNOLOGY, INC.,

                                    Defendant.

_____

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE OR STAY PROCEEDINGS**

**PRELIMINARY STATEMENT**

Defendant Etransmedia Technology, Inc. ("Etransmedia") provides medical

recordkeeping, billing, and related services and software to doctors' offices around the country.

In December 2009, Etransmedia entered into a contract with plaintiff Nephrology Associates,

P.C. ("NAPC") whereby Etransmedia would provide a computer system and proprietary

software into which NAPC was to enter electronic medical records, including patients' health

records, insurance information, diagnostic and insurance codes, and other data (the "Services

Agreement").  At the same time, Etransmedia and NAPC also entered into a contract whereby

Etransmedia would handle the billing of NAPC's patients and their insurance companies using

the information that NAPC was to input into the computer system (the "Billing Agreement").

Both contracts contain a choice of law provision indicating the applicability of New York law.

The Services Agreement also contains a broad arbitration provision stating that any dispute

arising out of or in connection to the parties' agreement must be resolved through binding

arbitration in Albany, New York.

In its complaint, NAPC alleges, among other things, that Etransmedia failed to

properly code insurance claims, improperly "balance billed" Medicaid patients, failed to submit

bills with the correct insurance information, and failed to respond to claim denials by insurance

companies.  All of these items concern the Services Agreement, as it was pursuant to that

agreement that the correct coding and insurance information was required to be entered into the

system – by NAPC, not Etransmedia.  NAPC's complaint explicitly alleges that Etransmedia

breached both the Billing Agreement and the Services Agreement, and attaches multiple letters

from NAPC's counsel to Etransmedia similarly alleging breaches of both Agreements, lumping

together the alleged breaches in several bullet points.  Accordingly, this matter should have been

brought before an arbitrator in Albany, New York, as NAPC's allegations arise from and/or are

directly connected to the parties' obligations under the Services Agreement.

Etransmedia has commenced a proceeding in the United States District Court for

the Northern District of New York, located in Albany, New York, to compel arbitration of this

dispute.  This Court, therefore, should dismiss NAPC's complaint for improper venue, as the

parties' agreement to resolve all disputes in connection with the Services Agreement in Albany,

New York waives their right to litigate these claims in any other venue, or transfer this matter to

the Northern District of New York for consolidation with the proceeding to compel arbitration.

In the alternative, this Court should stay further proceedings in this matter pending determination

of the Petition to Compel Arbitration.

## RELEVANT FACTUAL BACKGROUND

Etransmedia is a company located in Troy, New York, a suburb of Albany, New

York, that provides information services to medical practices, including integrated software and

systems for maintaining electronic medical records ("EMR") for use in patient treatment,

recordkeeping, and billing.  Complaint, ¶¶ 3, 9[1]; Declaration of Vikram Agrawal, dated August

31, 2011 ("Agrawal Decl."), ¶ 3.  NAPC is a medical practice in Augusta, Georgia that provides

treatment to patients with kidney disease and related conditions.  Complaint, ¶¶ 6-7.  In late

2009, NAPC agreed to license a computer system from Etransmedia for use with EMR and for

Etransmedia to use relevant information from the EMR to generate bills to NAPC's patients and

their insurance carriers (the "EMR system" or the "system").  Agrawal Decl., ¶ 4.

Accordingly, on or about December 30, 2009, NAPC and Etransmedia entered

into two contracts, the Services Agreement and the Billing Agreement (collectively, the

"Agreements").  Complaint, ¶¶ 13, 25.  Pursuant to the Services Agreement, NAPC was required

to, among other things:

- Save its financial and patient data on the system provided by Etransmedia on a daily basis;
- Use the Etransmedia's proprietary software for entry of EMR into the system in accordance with the documentation provided by Etransmedia;
- Identify and provide a key employee to act as the liaison between NAPC and Etransmedia in the event issues arose.

Agrawal Decl., Ex. A, ¶ 11(a) and (b).[2]

---

[1]     A copy of the Summons and Complaint are attached to the Declaration of Robert
L. Lash, dated September 1, 2011 ("Lash Decl.), as Exhibit A.

[2]     Exhibit A to the Agrawal Decl. is a copy of the Services Agreement, which was
expressly referenced in the Complaint, ¶¶ 25-28, and in the exhibits to the Complaint.  On a Rule
12 motion to dismiss, the Court may consider documents referenced in the complaint.  *See Day
v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Services Agreement further specified that it was NAPC's responsibility to upload all patient data into the system for use by Etransmedia and that it also was NAPC's responsibility to supplement, update, and modify that data as necessary for Etransmedia's use. Agrawal Decl., Ex. A, ¶ 11(h).  Pursuant to the Billing Agreement, Etransmedia was required to submit claims and statements to NAPC's patients and/or their insurance carriers, based on the patient data provided by NAPC.  Agrawal Decl., Ex. B, ¶ 2.1.[3]

Both Agreements contain a choice of law provision specifying that they must be construed in accordance with New York State law.  Agrawal Decl., Ex. A, ¶ 17(j), Ex. B, ¶ 5.1. Furthermore, the Services Agreement specifies that:

> Any dispute or claim arising out of, *or in connection with*, this Agreement, shall be finally settled by binding arbitration in Albany, New York in accordance with the then-current rules and procedures of the American Arbitration Association . . . .

Agrawal Decl., Ex. A, ¶ 17(j) (emphasis added).

On or about July 27, 2010, NAPC's attorneys sent Etransmedia a letter alleging that Etransmedia breached both Agreements, and purporting to terminate them.  Complaint, Ex. B.  On or about June 7, 2011, NAPC's attorneys sent Etransmedia a second letter alleging that Etransmedia had continued to breach both Agreements.  Complaint, Ex. E.  On or about July 7, 2011, NAPC commenced this action in the Superior Court of Richmond County, alleging substantially the same breaches listed in its July 27, 2010 and June 7, 2011 letters and attaching those letters to the Complaint.  Complaint, ¶¶ 34, 60, Ex. B, Ex. E, *passim*.  In its Complaint, NAPC seeks declaratory relief requiring Etransmedia to return all patient and other information concerning NAPC, all of which is stored in the EMR system pursuant to the Services Agreement,

---

[3]     Exhibit B to the Agrawal Decl. is a copy of the Billing Agreement, which was

- 4 -

in addition to monetary damages.  Complaint, Count II, *ad damnum* clause, ¶ B; Agrawal Decl.,

¶ 30.

Etransmedia was served with the Summons and Complaint on July 12, 2011 and

timely removed the action to this Court.  On August 31, 2011, Etransmedia filed a Petition to

Compel Arbitration in the United States District Court for the Northern District of New York,

seeking an Order from that Court compelling NAPC to submit the dispute raised in this action to

binding arbitration in Albany, New York in accordance with the arbitration provision in the

Services Agreement.  A copy of that Petition is attached as Exhibit B to the Lash Decl.

By Notice dated August 31, 2011, the District Court for Northern District of New

York scheduled a hearing on the Petition to Compel Arbitration for October 14, 2011.  A copy of

that Notice is attached as Exhibit C to the Lash Decl.

<u>ARGUMENT</u>

I.      **This Action Should Be Dismissed Because NAPC Waived Its Right To Venue In**
        **<u>This District When It Agreed To Arbitrate In Albany, New York.</u>**

        A.      **Venue Is Improper If The Parties Have Agreed To Arbitrate In A Foreign**
                **Venue**

        A complaint is subject to dismissal for improper venue, pursuant to Fed. R. Civ.

P. 12(b)(3) where the parties have entered into a contract containing a forum selection provision

mandating a foreign venue for resolution of their dispute.  *See Slater v. Energy Services Group*

*Int'l*, 634 F.3d 1326, 1332 (11th Cir. 2011) ("This court has held, in the context of a forum-

selection clause which mandated a foreign venue, that a motion pursuant to Rule 12(b)(3) is the

proper avenue for relief."); *Belcher-Robinson, L.L.C. v. Linamar Corp.*, 699 F. Supp. 2d 1329,

1333 (M.D. Ala. 2010) ("In the Eleventh Circuit, a motion to dismiss on the basis of a  forum-

referenced in the Complaint and attached thereto.

selection clause is brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue.") (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir.1998)). *See also Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1243 (11th Cir. 2011) (affirming dismissal for improper venue where parties had agreed to a forum selection clause specifying foreign venue).

"When a Rule 12(b)(3) motion is based on a forum selection clause, *the plaintiff bears the burden of showing that venue is proper*." *British Marine Luxembourg, S.A. v. Deep Sea Financing, LLC*, No. CV 409-023, 2010 WL 1960994, at \*6 (S.D. Ga. May 13, 2010) (citing *Lobo v. Celebrity Cruises, Inc.*, 426 F. Supp. 2d 1296, 1304 (S.D. Fla. 2006); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)) (emphasis added); *see also Belcher-Robinson*, 699 F. Supp. 2d at 1333 ("When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of showing that venue in the forum is proper.").

Furthermore, "'[a] judge may make factual findings necessary to resolve motions to dismiss for ... improper venue,' so long as the resolution of the factual disputes is not an adjudication on the merits of a case." *Id.* (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). "Thus, in the context of a Rule 12(b)(3) motion to dismiss for improper venue the court may consider matters outside the pleadings such as affidavit testimony, particularly when the motion is predicated upon key issues of fact." *Id.* (internal quotation marks omitted); *Thomas v. Rehabilitation Services of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1377 (M.D. Ga. 1999) (finding that on a Rule 12 motion to dismiss for improper venue, the court may consider matters outside the pleadings).

Here, the parties agreed to submit any claim or dispute "arising out of, or in connection with" the Services Agreement to binding arbitration in Albany, New York in

accordance with the then-current rules of the American Arbitration Association.[4]  It is well-

established that an agreement to arbitrate in a particular venue will be construed as a forum

selection clause.  As the Supreme Court has held, "An agreement to arbitrate before a specified

tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of

suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*,

417 U.S. 506, 519 (1974); see also *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515

U.S. 528, 534 (1995) (finding that arbitration clauses are a subset of forum selection clauses).

   Thus, in *Betts v. SGE Management, LLC*, 402 Fed. App'x 475 (11th Cir. 2010),

the Eleventh Circuit affirmed the district court's dismissal for improper venue of an action filed

in the United States District Court for the Northern District of Georgia, where the parties had an

agreement requiring arbitration of disputes in Texas.  *Id.* at 478.  Similarly, in *Faulkenberg v. CB*

*Tax Franchise Systems, LP*, 637 F.3d 801 (7th Cir. 2011), the Seventh Circuit recently held that

a provision in the parties' franchise agreement requiring arbitration in Texas required dismissal

of the plaintiff's action in Illinois district court on grounds of improper venue.  *Id.* at 810-812

("Accordingly, this case was properly dismissed for improper venue based on the arbitration

clause in the franchise agreement.").  *See also Continental Cas. Co. v. Am. Nat. Ins. Co.*, 417

F.3d 727, 733 (7th Cir. 2005) ("district court ultimately dismissed this case because the forum

selection clauses in the Quota Share Contract and in the Participation Agreement required

---

  [4]  The courts have interpreted arbitration provisions using such language very
broadly.  *See U.S. v. Hill*, 643 F.3d 807, 875 (11th Cir. 2011) (quoting *Pennzoil Exploration and
Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998) ("[C]ourts distinguish
'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract
from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the
contract."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) ("the
parties agreed to a *broad* arbitration clause, which read in part: 'Any controversy or claim
*arising out of or relating to this Agreement*.'") (emphasis added).

arbitration in other districts. We have held dismissal under these circumstances to be

appropriate."); *Yessenow v. Neal, Gerber & Eisenberg, LLP*, No. 2:08-CV-123-TS, 2008 WL

4539009, at * 3 (N.D. Ind. Oct. 7, 2008) (dismissing action for improper venue where contract

required arbitration in a foreign venue); *Lobo v. Celebrity Cruises, Inc.*, 426 F. Supp. 2d 1296

(S.D. Fla. 2006) (same).

> **B.      The Allegations of the Complaint Implicate the Arbitration Provision in the Services Agreement**

NAPC explicitly alleges in the Complaint that Etransmedia breached both the

Billing Agreement and the Services Agreement.  Complaint, ¶¶ 25-28*.*  Indeed, for clients such

as NAPC who choose to have Etransmedia provide an integrated EMR system, the Services

Agreement and Billing Agreement work hand-in-hand, whereby patients' data, including

insurance information, billing and diagnostic codes, and payment information are required to be

inputted into the system by the client (in this instance, NAPC) pursuant to the Services

Agreement.  Agrawal Decl., ¶ 13.  Etransmedia in turn relies on the accuracy and completeness

of that information to generate insurance claims and patient statements in accordance with the

Billing Agreement.  Agrawal Decl., ¶ 14.  Where information necessary for billing purposes is

missing or incomplete, messages are sent between Etransmedia and the client through the

integrated system, the functionality of which is governed by the Services Agreement.  Agrawal

Decl., ¶ 15.  Thus, where a client contracts for the EMR system pursuant to the Services

Agreement and billing services pursuant to the Billing Agreement, the system is necessarily

integrated so that the billing services are dependent upon the parties' meeting their obligations

under the Services Agreement.  Agrawal Decl., ¶ 16.

In order to facilitate NAPC's use of the integrated system, and also to address any issues that arose, the Services Agreement required NAPC to designate one "key" employee to serve as both an in-house support person and also as liaison with Etransmedia.  Agrawal Decl., Ex. A, ¶ 11(b).  At the outset of the Agreements, NAPC designated their office manager, Wanda Schronce, as the key employee.  Agrawal Decl., ¶¶ 18.  While Ms. Schronce was NAPC's liaison, any concerns with the integrated system, including patient billing questions were addressed satisfactorily.  Agrawal Decl., ¶ 19.  After Ms. Schronce left, however, NAPC failed to designate her replacement, as required by the Services Agreement.  Agrawal Decl., ¶ 20.  In its July 27, 2010 and June 7, 2011 letters (both attached to and part of the Complaint), NAPC subsequently complained about the requirements of the integrated system, and told Etransmedia that it wanted to terminate both Agreements, alleging that Etransmedia's conduct constituted breach of both Agreements.  Agrawal Decl., ¶ 21; Complaint, Exs. B and E.

Moreover, the specific breaches alleged by NAPC in its Complaint plainly "arises out of, or in connection with," the parties' obligations under the Services Agreement.  For example, NAPC alleges that Etransmedia improperly "balance billed" Medicaid patients.  Complaint, ¶ 34(A).  Balance billing is when an insurance carrier has paid only a portion of the physician's charges and the physician bills the patient for the remaining balance, and is illegal with respect to approved Medicare and Medicaid services.  However, Etransmedia would only know that a particular patient participated in Medicare or Medicaid (and thus, not to balance bill) if NAPC entered that information into the EMR system pursuant to the Services Agreement.  Agrawal Decl., ¶ 25.

NAPC also alleges that Etransmedia failed to properly code claims relating to Medicare patients and submitted bills to incorrect payment sources.  Complaint, ¶¶ 34(A), (I).

However, pursuant to the Services Agreement, it was NAPC's sole responsibility to provide the appropriate diagnostic and insurance codes, as well as the correct information as to the patients' insurance coverage.  Agrawal Decl., ¶ 26.

NAPC further alleges that Etransmedia failed to record payments received from patients or insurers and would occasionally send bills to patients even after the charges had been paid.  Complaint, ¶ 34(G).  However, since payments by patients or their insurance carriers were made directly to NAPC, not to Etransmedia, it was NAPC's responsibility to record that payment in the EMR system, pursuant to the Services Agreement, in order to keep records updated so that Etransmedia would know that a bill had been paid.  Agrawal Decl., ¶ 27.

NAPC also alleges that Etransmedia failed to properly respond when insurance carriers denied claims.  Complaint, ¶ 34(H).  However, since insurance carriers typically would only notify NAPC, not Etransmedia, when a claim was denied, it was NAPC's responsibility, pursuant to the Services Agreement, to input that data into the EMR system, so that Etransmedia would know a claim had been denied and the basis for the denial, without which information Etransmedia could not respond or resubmit the claim.  Agrawal Decl., ¶ 28.

Furthermore, most, if not all, of these issues arose after NAPC's Office Manager, Ms. Schronce, left, and are attributable to NAPCs failure to designate another liaison, as expressly required by the Services Agreement.  Agrawal Decl., ¶ 29.

Additionally, in its Complaint, NAPC seeks declaratory relief from the Court requiring Etransmedia to return all patient and other information concerning NAPC.  All of that information, though, is stored in the EMR system pursuant to the Services Agreement.  Agrawal Decl., ¶ 30.

Thus, each of the alleged breaches raised in the Complaint, as well as the relief

sought by NAPC, arises from or is connected to the parties' obligations under the Services

Agreement, and accordingly directly implicates the arbitration provision.  Since the arbitration

provision specifies that the arbitration must take place in Albany, New York, venue in this

District is improper and the action should be dismissed.[5]

**II.      If the Court Does Not Dismiss This Action, It Should Transfer Venue to The
           <u>Northern District of New York.</u>**

Under the Federal Arbitration Act ("FAA"), an arbitration must be held "within

the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.

Thus, where an arbitration agreement designates a particular forum for the arbitration, only a

district court within that jurisdiction can compel the arbitration.  *See Merrill Lynch, Pierce,*

*Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327-28 (7th Cir. 1995).  As the Court in *Ansari v.*

*Qwest Comm. Corp.*, 414 F.3d 1214 (10th Cir. 2005), held:

> [The] majority view holds that where the parties agreed to arbitrate
> in a particular forum only a district court in that forum has
> authority to compel arbitration under § 4.  In other words, a district
> court lacks authority to compel arbitration in other districts, or in
> its own district if another has been specified for arbitration.  Any
> other result renders meaningless the § 4 mandate that arbitration
> and the order compelling arbitration issue from the same district.

*Id*. at 1219-20 (internal quotes and citations omitted); *but see Dupuy-Busching Gen. Agency, Inc.*

*v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing a Mississippi

district court's order directing parties to proceed with arbitration in New Jersey where the

plaintiff brought suit in Mississippi rather than in the contract forum).

---

[5]      Furthermore, since the arbitration provision specifies that claims or disputes must
be resolved in an arbitration in accordance with the rules of the American Arbitration

Because NAPC filed this action in a jurisdiction other than the venue in which

they agreed to arbitrate, the court may transfer the matter to a district court within the agreed-

upon venue.  *See Am. Int'l Specialty Lines Ins. Co., Inc. v. A.T. Massey Coal Co.,* 628

F. Supp. 2d 674 ( E.D. Va. 2009) (transferring action *sua sponte*, "in the interests of justice," to

the venue set forth in the parties' arbitration agreement); *Optopics Labs. Corp. v. Nicholas*, 947

F. Supp. 817, 824-25 (D.N.J. 1996) (transferring venue to a district authorized to compel

arbitration, as opposed to staying action, to conserve judicial resources and avoid multiplicitous

litigation); *Bao v. Gruntal & Co.*, 942 F. Supp. 978, 983 (D.N.J. 1996) (granting transfer to

district authorized to compel arbitration); *see also Braman v. Quizno's Franchise Co.*, No.

5:07CV2001, 2008 WL 611607, at * 6 (N.D. Ohio Feb. 20, 2008) ("[I]f the forum selection

clause is mandatory, then, the interest of justice would weigh toward transfer.")

Thus, in *Am. Int'l Specialty Lines*, the court first found that, "It is well established

that the transfer of a case to cure improper venue should only occur when such a transfer would

be '[f]or the convenience of parties and witnesses,' and would also be 'in the interest of justice.'"

 628 F. Supp. 2d  at 685 (citing 28 U.S.C. § 1404(a)).  The court further found, though, that

although the relevant events occurred almost exclusively in West Virginia, "the fact that the

parties freely chose New York as the location of their putative arbitration, it is apparent that New

York also has been deemed a convenient forum for arbitration by the parties." *Id.*  The court

then held that, given that the location of the arbitral forum was contained in a freely-negotiated

agreement between the parties, "it appears that transferring the case to the agreed-upon location

Association, the Court should also dismiss the complaint for lack of jurisdiction or failure to
state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

of arbitration would be in the interest of justice", and, therefore, transferred venue to the United

States District Court for the Southern District of New York.  *Id.*

Here, Etransmedia is located in a suburb of Albany, New York, and all of its

operations, including oversight of the EMR system and billing activities for NAPC, occurred

there.  Through the EMR system, NAPC also regularly communicated with Etransmedia in

suburban Albany.  Thus, a significant portion of the activities alleged in the Complaint did occur

in the Northern District of New York.  Moreover, the parties freely agreed to arbitrate in Albany,

in accordance with the rules of the American Arbitration Association, thereby agreeing that

Albany is a convenient forum.  Transfer to the Northern District of New York also would allow

for consolidation of this action with the pending Petition to Compel Arbitration.  Accordingly, if

this Court does not dismiss the action based on it being filed in the improper venue, the Court

should transfer venue to the United States District Court for the Northern District of New York,

as pursuant to the parties' agreement that is both a convenient venue and in the interests of

justice.

**III.    If The Court Determines Not To Dismiss or Transfer This Action, In the Alternative
It Should Order The Action Stayed Pending Determination By The Court In The
<u>Northern District of New York on the Petition to Compel Arbitration.</u>**

Although dismissal or transfer is proper, as discussed above, should the Court

decline to grant either of that relief, the Court should, in the alternative, order that this action be

stayed pending a determination of the Petition to Compel Arbitration filed in the Northern

District of New York.  It has long been recognized that a court has inherent authority to stay a

matter.  *See Stone v. I.N.S.*, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts

have inherent power to stay proceedings and 'to control the disposition of the causes on its

docket with economy of time and effort for itself, for counsel, and for litigants.'") *(quoting*

- 13 -

*Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  Courts have also recognized that a stay is appropriate to conserve judicial resources and where necessary to avoid inconsistent decisions between different courts.  *See*, *e.g.*, *Great Lakes Dredge and Dock Co. v. Ebanks*, 870 F. Supp. 1112, 1119-20 (S.D. Ga. 1994) (granting stay of proceedings in interests of judicial economy and policies of avoiding inconsistent judgments and piecemeal litigation); *see also GulfMark Offshore, Inc. v. Bender Shipbuilding and Repair Co.*, No. 09-0249-WS-N, 2009 WL 3756708, at \*1 (S.D. Ala. Nov. 9, 2009) (noting that court had previously held that stay is proper under the inherent powers of the Court to avoid inefficiencies, unnecessary duplication, and risk of inconsistent judgments); *Miccosukee Tribe of Indians v. South Florida Water Mgmt. Dist.*, No. 98-06056-CIV, 2007 WL 7377465, at \* 3 (S.D. Fla., Mar. 28, 2007) ("The Court thus finds that the interests of justice and judicial economy, including avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources, will be promoted by granting a stay of this proceeding.").

It would be a waste of judicial resources, as well as the parties' own time and resources, for this Court and the parties to engage in any significant litigation activities here while the District Court for the Northern District of New York determines whether the parties will be compelled to arbitrate their dispute in this matter.  Furthermore, without a stay, there is a great risk of inconsistent rulings between this Court and the Court in the Northern District of New York, as well as with the rulings of the arbitrator should arbitration be compelled. Therefore, if this Court declines to either dismiss this matter or transfer venue to the Northern District of New York, the Court should stay all further proceedings until the Petition to Compel

- 14 -

Arbitration is resolved.[6]  As noted above, the District Court for the Northern District of New

York has scheduled a hearing on the Petition to Compel Arbitration for October 14, 2011.

### CONCLUSION

For the foregoing reasons, defendant Etransmedia Technology, Inc. respectfully

requests that the Court enter an Order dismissing the Complaint without prejudice or, in the

alternative, transferring this action to the United States District Court for the Northern District of

New York, or staying this action pending a final determination on the Petition to Compel

Arbitration filed in United States District Court for the Northern District of New York.

DATED:  Augusta, Georgia
          September 1, 2011

                              TUCKER, EVERITT, LONG, BREWTON & LANIER

                              By:  S/ BENJAMIN H. BREWTON
                                     Benjamin H. Brewton
                                     State Bar No. 002530
                              P.O. Box 2426
                              Augusta, Georgia 30903
                              Telephone No.: (706) 722-0771
                              Fax No.: (706) 722-7028
                              Email: bbrewton@thefirm453.com

---

[6]      Once it is determined that a matter is within the scope of an arbitration agreement, a stay is mandatory under section 3 of the FAA.  9 U.S.C. § 3; *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994) ("A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement."); *Gutierrez v. Academy Corp.*,  967 F. Supp. 945, 947 (S.D. Tex 1997) ("Section 3 of the Act requires this Court to stay litigation of any issue referable to arbitration under a written agreement . . . . This provision is mandatory; if the issues in a case are within the reach of the agreement, the district court has no discretion to deny the stay.").

Of Counsel:

Robert L. Lash
PHILLIPS LYTLE LLP
One HSBC Center, Suite 3400
Buffalo, New York 14203
Telephone No.: (716) 847-8400
Fax No.: (716) 852-6100
Email: rlash@phillipslytle.com

Doc # 01-2504955.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

NEPHROLOGY ASSOCIATES, P.C.,

                     Plaintiff,

          v.                                Case No.: 1:11-cv-00123-JRH -WLB

ETRANSMEDIA TECHNOLOGY, INC.,

                     Defendant.

## CERTIFICATE OF SERVICE

This is to certify that I have on this day served the foregoing documents on all the parties

in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF")

which was generated as a result of electronic filing.

Submitted this 1st day of September, 2011.

By:  S/ BENJAMIN H. BREWTON
       Benjamin H. Brewton
       State Bar No. 002530
       P.O. Box 2426
       Augusta, Georgia 30903
       Telephone No.: (706) 722-0771
       Fax No.: (706) 722-7028
       Email: bbrewton@thefirm453.com